Argued February 8, affirmed May 31, 1922.

## MENDELSOHN *v.* MENDELSOHN.

(207 Pac. 158.)

**Reformation of Instruments—Evidence Held to Show Mutual Mistake in Omitting Exception from Release.**

1. Evidence that the parties to an agreement for division of the property after divorce made a subsequent agreement to settle a dispute as to the distribution of the household furniture, in which the husband agreed to deliver certain articles to the wife, and to pay a stated sum in cash, and that, on delivery and payment, the scrivener for the wife's attorney copied a form of release which included all demands against the husband, without excepting therefrom the claim against the husband for future installments of cash payments provided for by the original agreement, concerning which there was no dispute, *held* to show a mutual mistake entitling the wife to a reformation of the release by the insertion of the exception.

**Contracts — Law Imputes Intention Corresponding to Reasonable Meaning of Words and Acts.**

2. The law imputes to a party to an agreement the intention corresponding to the reasonable meaning of his words and acts.

———

1. Mutual mistake as ground for reformation of written instruments, see notes in 30 Am. St. Rep. 621; 117 Am. St. Rep. 227; 3 Ann. Cas. 444.

Sufficiency of evidence to warrant reformation of instrument on ground of mutual mistake, see note in 19 Ann. Cas. 343.

**Contracts—Every Agreement Springs from an Offer and Acceptance.**

3. Every agreement springs from offer and acceptance, sometimes by words alone, sometimes by acts alone, and sometimes by both words and acts.

**Reformation of Instruments—Evidence Held not to Show Inexcusable Negligence Barring Relief from Mistake.**

4. Evidence that the scrivener for plaintiff copied a form for release, which plaintiff signed without intending to release a claim which was not in dispute between the parties, but which was not excepted from the terms of the release, *held* not to show inexcusable negligence which precludes plaintiff from correcting the mistake.

**Equity—Complete Relief is Administered by Equity in Case Transferred Because of Equitable Reply.**

5. Where plaintiff in an action at law interposed a reply claiming equitable relief by reformation of a release, as permitted by Section 390, Or. L., as amended in 1917, and the case was thereupon transferred from the law side to the equity side of the court, it was proper for equity to give complete relief, and it was not necessary, after reforming the release, to transfer the case back to the law side for further proceedings.

From Marion: George G. Bingham, Judge.

Department 1.

Defendant appeals from a decree of the Circuit Court reforming and enforcing a written instrument. Affirmed.

For appellant there was a brief over the name of *Messrs. Carson & Brown*, with an oral argument by *Mr. Thomas Brown.*

For respondent there was a brief and oral argument by *Mr. John Bayne.*

BEAN, J.—The controversy arises out of substantially the following facts: The defendant and plaintiff were formerly husband and wife living in Salem, Oregon. In the fall of 1917, plaintiff instituted a suit for divorce against defendant. Shortly

after the institution of the divorce suit an agreement was entered into between the parties wherein it was provided that in the event of a divorce the defendant should deliver to the plaintiff 1,000 shares of mining stock and 500 shares to her daughter Ruth; also deliver to the plaintiff all cut glass, linen and other miscellaneous articles in their house, together with the sum of $500 in cash and the further sum of $500 in question in monthly installments of $50 each, to begin with the month of December, 1917; and also pay the plaintiff the value to be placed upon household goods then in his residence excepting a certain victrola, gas range, leather couch, bedroom set complete, one large rug, two small rugs, bookcase, and all books not belonging to the plaintiff or her daughter Ruth. Thereafter on October 3, 1917, a decree of divorce was entered in the suit dissolving the bonds of matrimony existing between the parties. Defendant delivered the mining stock, cut glass, linen and miscellaneous articles to the plaintiff and paid her the $500. An effort was made to adjust the matter of the household goods for which the defendant was to pay the plaintiff. Plaintiff desired to obtain the victrola. On October 5, 1917, the matter was adjusted by the defendant agreeing to pay $100 in cash and deliver to the plaintiff the victrola and one half of the silverware, in lieu of paying her the value of the household goods, the plaintiff agreeing to accept the same and give the defendant a receipt in full of all claims and demands except the sum of $500 to be paid in monthly payments. The $100 was then paid, and the one half of the silverware and the victrola delivered to the plaintiff, who, through Mr. A. A. Hall delivered to the defendant the receipt which is set out in defend-

ant's answer releasing and discharging defendant "from all, and all manner of actions and causes of actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variance, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law or equity, which against the said M. P. Mendelsohn I ever had, or now have, or which I, or my heirs, executors, or administrators hereafter, can, shall or may have, for, upon, or by reason of any matter, cause or anything whatsoever, from the beginning of the world to the date of these presents."

Mr. Hall, the scrivener, in writing the receipt, by oversight, inadvertence and mistake omitted to write the words excepting the said $500 to be paid in monthly payments from the operation of the release. The plaintiff by oversight, inadvertence and mistake supposed she signed a receipt and release covering the value of the household goods only and releasing the defendant from all claims and demands except the sum of $500. The present suit was instituted to collect the $500 due in monthly installments beginning with the month of December, 1917. The defendant contends that the subsequent agreement evidenced by the release completely exonerated him from any further liability under the original agreement.

The complaint is in the ordinary form employed in actions on contracts. The defendant answered the complaint and set up two further and separate defenses, the one being the modification of the contract and its execution as modified and the other being the release. Plaintiff replied to the further and separate defenses, pleading a mutual mistake in the preparation and execution of the release under

Section 390, Or. L., permitting an equitable defense in an action at law to be raised by the answer or reply. The trial court proceeded to hear the issues raised by the answer and reply as an equity proceeding, and at the conclusion of the hearing found for the plaintiff and decreed a reformation of the release by the insertion of an excepting clause and that plaintiff should have judgment as prayed for in her complaint.

1. The alleged mistake is the chief question in controversy in this suit, although it is not the only matter urged by the defendant. A careful reading of the testimony convinces us that the contract, which the receipt or release was intended by the parties to evidence, was to the effect that the defendant should pay the plaintiff $100 and deliver to her one half of the silverware and the victrola in lieu of the value of the household goods agreed to be paid for by defendant. This was the only matter left unsettled by the original agreement. Plaintiff and defendant had two parties examine the furniture in order to place a value thereon. On account of the change in the agreement no record was made of the valuation and it is not remembered by the witnesses. The defendant made the proposition to the plaintiff through her attorney, Mr. Hall, to pay the $100 and give the plaintiff one half the silverware and the victrola, and requested a receipt in full. It was in evidence that such receipt should be in full for the claim in regard to the household furniture and nothing more. In attempting to adjust the matter there had been difficulty as to several little things which were in dispute and were not mentioned in the agreement. During all of the negotiations in regard to making the change in the original agreement

which culminated in the plaintiff's accepting $100, the victrola and silverware nothing was said in regard to the $500 to be paid in installments which would become due thereafter. The $500 was not in the minds of either party. This was no part of the subject matter of the transaction. It was not intended by either party to include the $500 in the receipt or release. The scrivener, for some reason as he states, followed a stereotyped form instead of indicating what was received and what it was for. The defendant accepted the receipt; the mistake was mutual. The value of the victrola according to the testimony was about $100, and the silverware according to the plaintiff was worth about $10 and according to the testimony of the defendant about $30. It is stated by Mr. Hall in his cross-examination that these items just about covered the value of the household goods.

2. The law imputes to a person the intention corresponding to the reasonable meaning of his words and acts.

3. Every agreement springs from offer and acceptance, sometimes by words alone, sometimes by acts alone and sometimes by both words and acts: 9 Cyc 245, 247.

4. It is claimed by the defendant that the plaintiff was guilty of negligence in the matter so as to preclude her from having the written instrument reformed. Considering all the circumstances as detailed by the testimony, we do not think that the plaintiff was guilty of inexcusable negligence so as to preclude her from having the mistake corrected: 2 Pomeroy, Equity Jurisprudence (3 ed.), § 856; *Howard* v. *Tettelbaum,* 61 Or. 149 (120 Pac. 373).

5. It is contended by defendant that after the trial court decreed a reformation of the written instrument the action at law should have proceeded accordingly. Where a case is transferred from the law side to the equity side of the court it is proper procedure for the equity court to proceed to administer complete relief: *Haynes* v. *Whitsett,* 18 Or. 454 (22 Pac. 1072); *Livesley* v. *Johnston,* 48 Or. 40 (84 Pac. 1044); *Tokstad* v. *Daws,* 68 Or. 86 (136 Pac. 844); *Action* v. *Lamberson,* 102 Or. 472 (202 Pac. 421).

In the case of *Crossen* v. *Campbell,* 102 Or. 666 (202 Pac. 745), we discussed somewhat at length the effect of the amendment of 1917 to Section 390, Or. L., to which for the sake of brevity we here refer. In *Churchill* v. *Meade,* 92 Or. 633 (182 Pac. 370), Mr. Justice BURNETT said of this section as compared to the same before its amendment:

"It may be said by a figure of speech that the statute opens a new door into chancery through the law courts, whereas before, the entry must have been by a direct suit in that forum."

There is nothing in Section 390 of the Code to change the procedure in equity from what it was prior to the amendment of 1917, other than to permit a litigant in a law action to go into equity through the law side of the court. On the contrary, the amended section provides: "The parties shall have the same rights in such case as if an original bill embodying the defense or seeking the relief prayed for in such answer or reply had been filed.'' After the written instrument was reformed and the mistake corrected there was nothing remaining to be tried in the law action. The issues all having been

determined by the equity court it was appropriate to enter a judgment accordingly.

The decree of the lower court should be affirmed. It is so ordered. AFFIRMED.

BURNETT, C. J., and McBRIDE and RAND, JJ., concur.